**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**Waco Division**

| | |
|---|---|
| KEITH MCKEEVER | ) |
| | ) |
| Plaintiff, | ) Case No. 6:18-CV-00063 |
| | ) |
| v. | ) |
| | ) |
| BANCORPSOUTH, INC. | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Keith McKeever ("McKeever") files this Original Complaint against BancorpSouth, Inc. ("BancorpSouth") and respectfully requests that the Court enter judgment in his favor and award him all damages, fees, interest, and costs recognized at law or in equity. McKeever would respectfully show the Court the following:

### I. Parties

1. Plaintiff Keith McKeever is an individual residing in Temple, Bell County, Texas.

2. Defendant BancorpSouth is a Mississippi Corporation with its principal place of business in Tupelo, Mississippi and maintaining operations in Alabama, Arkansas, Florida, Louisiana, Mississippi, Missouri, Tennessee, Texas, and Illinois. BancorpSouth can be served by serving its registered agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

### II. Jurisdiction & Venue

3. **Diversity Jurisdiction --** This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). McKeever resides in and is a citizen of Texas. BancorpSouth is a citizen of

Mississippi because it is a Mississippi Corporation with its principal place of business in Mississippi. The amount in controversy exceeds $75,000 in value, exclusive of interests and costs as Plaintiff seeks wages and other compensation in excess of $500,000.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this case occurred in this district. BancorpSouth and its predecessor, First State Bank of Central Texas, engaged McKeever to provide employment services in Temple, Texas, entered into the contract at issue in this case in Temple, Texas, delivered the October 29, 2015 letter to McKeever in Temple, Texas, and maintain an office and employ people in Temple, Texas.

5. Courts in the State of Texas have personal jurisdiction over BancorpSouth because BancorpSouth operates banking locations in numerous Texas cities, employs numerous employees in Texas, does substantial business in Texas, and entered into the contract at issue in this case in Texas for work to be performed in Temple, Texas.

### III. Facts

6. McKeever worked as Vice Chairman and Chief Credit Officer of First State Bank Central Texas ("First State") in Temple, Texas for approximately 16 years and has been employed in Temple, Texas with First State since November 2001. In 2013, First State began merger negotiations with BancorpSouth. During the negotiations over the merger, but prior to the closing of the merger, BancorpSouth and First State sought to incentivize senior leadership of First State to remain employed until the closing and after the closing. First State and BancorpSouth pursued this goal of locking executives into their jobs by offering a combination of financial incentives and career-limiting covenants not to compete.

7. On or about February 3, 2014, McKeever, BancorpSouth and First State signed the Executive Employment Agreement ("Agreement"). A copy of the Agreement is attached as **Exhibit 1** to this Complaint.

8. BancorpSouth and First State also issued a letter dated January 22, 2014, which was distributed on or about January 28, 2014 that purports to "further clarif[y]" the Agreement. A copy of the January 22, 2014 letter and the January 28, 2014 memorandum are attached as **Exhibit 2** to this Complaint.

9. Some of the terms of the Agreement became binding immediately while other terms would apply only upon the closing of the merger. For example, upon executing the Agreement, McKeever remained an employee at-will. However, the Agreement provided that, once the merger closed, BancorpSouth would become McKeever's employer, and McKeever would receive the benefit of a two (2) year term of employment, terminable by BancorpSouth only for Cause. (*See* Exhibit 1, ¶¶ 2.2, 6.2). The Agreement also provided that, during the 2-year post-closing term of employment, McKeever would have the security of a fixed salary that BancorpSouth could not reduce. (*See* Exhibit 1, ¶3.1). This promise of a two-year term coupled with a minimum salary was part of First State's and BancorpSouth's financial incentive to keep McKeever and other executives on board through and after the merger closed.

10. The Agreement also locked McKeever in to certain non-compete covenants immediately upon signing the Agreement. Upon execution, McKeever became bound to a customer non-solicitation covenant and separate employee non-solicitation covenant, both of which would begin upon termination of McKeever's employment and continue until one (1) year after his employment ended, whenever that might occur. McKeever also agreed to a

covenant not to compete prohibiting his working in banking in a large swath of the State of Texas for a two (2) year period starting on the date the merger would close.

11. The Agreement also provided that, upon the closing of the merger, McKeever would receive 6,250 restricted shares of BancorpSouth's common stock.

12. The merger negotiations between First State and BancorpSouth went on much longer than First State and BancorpSouth had told executives they would. In January 2014, when executives were instructed to sign their respective executive employment agreements, the two banks said the merger should be closed by no later than June 2014. However, June came and went, with no merger closed or in sight. The merger was not concluded in 2015 either.

13. By October 2015, *more than 20 months after the execution of the Agreement*, the merger had still not closed, and there was no known closing date in sight. First State and BancorpSouth knew they needed to incentivize executives to keep sticking it out and to remain with First State and BancorpSouth until and beyond the merger closing, whenever that might occur. So they amended the Agreement to assure executives that their guaranteed salary for the 2-year post-closing term would be either their current (as of October 29, 2015) salary or a higher salary if their salary should increase between October 29, 2015 and the date of the closing.

14. On October 29, 2015 First State (via Donald Grobowsky, Chairman of the Board and CEO) and BancorpSouth (via James Rollins, III, Chairman of the Board and CEO), sent a letter to McKeever acknowledging the delays in the closing of the merger. The letter, which was hand-delivered to McKeever by Don Grobowsky in Temple, Texas on or about October 29, 2015, reads in relevant part:

> Reference is made to that certain executive employment agreement by and among First State Bank Central Texas (the "Bank"), BancorpSouth, Inc.

4

("BancorpSouth") and you as clarified by the letter dated January 22, 2014 from BancorpSouth and acknowledged by the Bank (the "Agreement:")

As you are aware, the Bank and BancorpSouth have incurred longer than expected delays in the closing of the merger of the two institutions. In order to address uncertainty you may have regarding your compensation, the Bank and BancorpSouth hereby notify you that, beginning on the effective time of the merger, your annual base salary will be $312,000, and you will be entitled to receive a guaranteed cash bonus for your 2016 performance in the amount of $178,500 payable on or about the same time that all other annual bonuses for 2016 are paid to BancorpSouth executives; provided that you are employed by the Bank on that date (in each case, subject to applicable federal, state, and local taxes and withholdings). If, following the ordinary compensation review process for the Bank, your annual base salary or 2016 bonus is increased to an amount that is higher than the amount indicated in this letter, your annual base salary or 2016 bonus, as the case may be, at the effective time of the merger will be such higher amount and not the amount indicated in this letter.

We both value your continued contributions to the bank and look forward to a long and prosperous relationship. Should you have any questions, please do not hesitate to contact Don Grobowsky.

15.   The October 29, 2015 letter served to amend the Agreement.

16.   McKeever relied on the promises and representations in the October 29, 2015 letter to his detriment. Specifically, McKeever remained employed by First State based on the promise of the two-year employment term and a salary equal to the greater of $315,000 per year and his salary as of the effective time of the merger. McKeever also relied on the promises and representations in the October 29, 2015 letter by declining to advance beyond the preliminary stages of discussions with other banks about other employment opportunities.

17.   The representations by First State and BancorpSouth were material. McKeever's annual salary at the time of the October 29, 2015 letter was $312,000, which was $187,000 more than the base salary initially provided for in the Agreement. (*See* Ex. 1, ¶3.1(a)). By the time the merger closed, McKeever's base salary was $345,000, which is $220,000 more than initially provided for in the Agreement.

18. First State and BancorpSouth clearly intended that McKeever would act upon the representations in the October 29, 2015 letter. The very face of the October 29, 2015 letter shows that it was intended to cause employees to remain employed with First State and eventually BancorpSouth until the merger closed. For example, the letter begins by making reference to "that certain executive employment agreement," meaning the Agreement, which provides for a two-year term upon closing of the merger and a guaranteed base salary during that term. The letter notes that First State and BancorpSouth have incurred "longer than expected delays in the closing of the merger of the two institutions." The letter then represents that McKeever's salary at the effective time of the merger will be the greater of $315,000 per year and whatever higher salary he might be receiving immediately prior to the merger. The letter then concludes by further explaining that the intent of the representations is to incentivize his "continued contributions" to First State and to foster "a long and prosperous relationship."

19. McKeever performed under the Agreement and relied on its promises. McKeever remained employed by First State. In January 2018, more than two years after the October 29, 2015 letter and almost four years after the Agreement was initially signed, the merger between First State and BancorpSouth closed. This had several important consequences under the Agreement. As provided in the Recitals of the Agreement, BancorpSouth became McKeever's employer and took on the obligations as the "Employer." The closing also set an end-date for a two-year covenant not to compete. (*See* Ex. 1, ¶8.2(d)). Finally, the closing triggered the two-year term contract at the base salary that had been promised in the Agreement as amended by the October 29, 2015 letter.

20. McKeever at all times honored the Agreement. McKeever, in reliance on the Agreement, including the representations in the October 29, 2015 letter, continued to work in his position as Vice Chairman and Chief Credit Officer of First State before the merger.

21. McKeever continued his role as Executive Vice President of BancorpSouth after the merger, and never resigned or indicated his intent to resign. Nor was McKeever terminated. McKeever is employed by BancorpSouth to this day.

22. However, BancorpSouth has refused to honor the Agreement. BancorpSouth is not paying McKeever as provided in the Agreement as modified by the October 29, 2015 letter. Rather, BancorpSouth is paying McKeever $125,000 per year, a rate that is $220,000 per year less than the promised and agreed upon base salary.

23. BancorpSouth in breach of the Agreement. BancorpSouth is paying McKeever significantly less than the rate it agreed and represented.

24. BancorpSouth has also breached the Agreement by failing to award the restricted stock that it promised in the Agreement.

25. McKeever brought to BancorpSouth's attention its failure to honor the Agreement. BancorpSouth has repudiated its obligation to pay McKeever at the rate of $345,000 per year causing injury to McKeever.

### IV. Causes of Action

**Count 1: Breach of Contract**

26. McKeever incorporates and re-alleges paragraphs 1-25 above.

27. McKeever and BancorpSouth entered into a valid and binding written agreement as evidenced in Exhibits 1, 2 and 3 and described herein. McKeever honored the terms of the

Agreement at all times. BancorpSouth breached the Agreement by failing to pay the stated salary and by failing to award restricted stock.

28. McKeever has incurred damages as a result of BancorpSouth's breaches of the Agreement. McKeever is being paid at a rate that is $225,000 per year less than agreed for the two year term and has not been issued restricted stock at all.

**Count 2: Fraudulent Misrepresentation**

29. McKeever incorporates and re-alleges paragraphs 1-28 above.

30. In the alternative, and without waiving the above-referenced claim for breach of contract, McKeever also asserts that BancorpSouth has committed fraudulent misrepresentation. On or about October 29, 2015, BancorpSouth made the following representations in a written letter signed by Dan Rollins, its Chairman of the Board and Chief Executive Officer and delivered by Don Grobowsky by hand to Keith McKeever in his office in Temple, Texas:

> Reference is made to that certain executive employment agreement by and among First State Bank Central Texas (the "Bank"), BancorpSouth, Inc. ("BancorpSouth") and you as clarified by the letter dated January 22, 2014 from BancorpSouth and acknowledged by the Bank (the "Agreement:")
>
> As you are aware, the Bank and BancorpSouth have incurred longer than expected delays in the closing of the merger of the two institutions. In order to address uncertainty you may have regarding your compensation, the Bank and BancorpSouth hereby notify you that, beginning on the effective time of the merger, your annual base salary will be $312,000, and you will be entitled to receive a guaranteed cash bonus for your 2016 performance in the amount of $178,500 payable on or about the same time that all other annual bonuses for 2016 are paid to BancorpSouth executives; provided that you are employed by the Bank on that date (in each case, subject to applicable federal, state, and local taxes and withholdings). If, following the ordinary compensation review process for the Bank, your annual base salary or 2016 bonus is increased to an amount that is higher than the amount indicated in this letter, your annual base salary or 2016 bonus, as the case may be, at the effective time of the merger will be such higher amount and not the amount indicated in this letter.

> We both value your continued contributions to the bank and look forward to a long and prosperous relationship. Should you have any questions, please do not hesitate to contact Don Grobowsky.

31.     These representations were false. McKeever's annual base salary increased to $345,000 per year by the date of the closing of the merger. Yet when the merger closed, BancorpSouth lowered McKeever's salary to $125,000 per year. The misrepresentation was material. The represented salary was $220,000 per year more than the salary BancorpSouth is actually paying McKeever.

32.     BancorpSouth knew the representations were false and made the representations as a contractual promise with the undisclosed and unknown (to McKeever) intention of not performing. The very person who made the representations on BancorpSouth's behalf – Dan Rollins – is the same person who decided McKeever's post-merger salary and the same person who repudiated the promise to pay the higher salary. McKeever did not know the representations were false. In fact, McKeever relied on the fact that the representations were being made truthfully. In the alternative, McKeever alleges that, at a minimum, BancorpSouth made the representations about a specific intent to pay a specific salary without actually knowing the truth of such representations.

33.     BancorpSouth intended that McKeever would act upon the representations contained in the October 29, 2015 letter. The very face of the October 29, 2015 letter itself shows that the representations were intended to incentivize McKeever to remain employed with First State and eventually BancorpSouth until the merger closed. For example, the letter begins by making reference to "that certain executive employment agreement," meaning the Agreement. The letter notes that First State and BancorpSouth have incurred "longer than expected delays in the closing of the merger of the two institutions." The letter also places a condition on

9

McKeever's entitlement to the higher salary upon closing, which clearly shows the intention to induce McKeever to rely:  McKeever had to remain employed through the closing of the merger – a period of over two years -- to receive the benefit of the higher salary during the post-merger term.  The concluding paragraph of the letter further shows that the letter is intended to incentivize McKeever's "continued contributions" to First State and to foster "a long and prosperous relationship."

34.     McKeever in fact relied on the representations to his detriment, which has caused injury to McKeever. McKeever did exactly what First State and BancorpSouth incentivized him to do; he remained employed with First State until the merger and remained employed with BancorpSouth after the merger. This is precisely the benefit BancorpSouth sought when it made the promises and representations. McKeever further relied on the representations to his detriment by declining to advance beyond the preliminary stages of discussions with other banks about other opportunities.

35.     McKeever had no knowledge that BancorpSouth's representations were false. BancorpSouth's representations injured McKeever. He is now in a job at which he is being paid significantly less than represented.

**Count Three:  Negligent Misrepresentation**

36.     McKeever incorporates and re-alleges paragraphs 1-35 above.

37.     In addition and in the alternative, and without waiving the above-referenced claims for breach of contract and fraudulent misrepresentation, McKeever also asserts that BancorpSouth has committed negligent misrepresentation. On or about October 29, 2015, BancorpSouth made the following misrepresentations in a written letter signed by Dan Rollins,

its Chairman of the Board and Chief Executive Officer and delivered by Don Grobowsky by hand to Keith McKeever in his office in Temple, Texas:

> Reference is made to that certain executive employment agreement by and among First State Bank Central Texas (the "Bank"), BancorpSouth, Inc. ("BancorpSouth") and you as clarified by the letter dated January 22, 2014 from BancorpSouth and acknowledged by the Bank (the "Agreement:")
>
> As you are aware, the Bank and Bancorp South have incurred longer than expected delays in the closing of the merger of the two institutions. In order to address uncertainty you may have regarding your compensation, the Bank and BancorpSouth hereby notify you that, beginning on the effective time of the merger, your annual base salary will be $312,000, and you will be entitled to receive a guaranteed cash bonus for your 2016 performance in the amount of $178,500 payable on or about the same time that all other annual bonuses for 2016 are paid to BancorpSouth executives; provided that you are employed by the Bank on that date (in each case, subject to applicable federal, state, and local taxes and withholdings). If, following the ordinary compensation review process for the Bank, your annual base salary or 2016 bonus is increased to an amount that is higher than the amount indicated in this letter, your annual base salary or 2016 bonus, as the case may be, at the effective time of the merger will be such higher amount and not the amount indicated in this letter.
>
> We both value your continued contributions to the bank and look forward to a long and prosperous relationship. Should you have any questions, please do not hesitate to contact Don Grobowsky.

38.     These representations were false. McKeever's annual base salary increased to $345,000 per year by the date of the closing of the merger. Yet when the merger closed, BancorpSouth lowered McKeever's salary to $125,000 per year. The misrepresentation was material. The represented salary was $220,000 per year more than the salary BancorpSouth is actually paying McKeever.

39.     BancorpSouth failed to exercise that degree of diligence or expertise the public is entitled to expect of it. The very person who made the representations on BancorpSouth's behalf – Dan Rollins – is the same person who had authority to decide and did

in fact decide McKeever's post-merger salary and the same person who repudiated the promise to pay the higher salary.

40. As described above, the representations were material, were intended to be relied upon by McKeever, and were in fact reasonably relied upon by McKeever to his detriment.

41. McKeever in fact relied on the representations to his detriment, which has caused injury to McKeever. McKeever did exactly what First State and BancorpSouth incentivized him to do; he remained employed with First State for more than two additional years until the merger closed and remained employed with BancorpSouth after the closing of merger. This is precisely the benefit BancorpSouth sought when it made the promises and representations. McKeever further relied on the representations to his detriment by declining to advance beyond the preliminary stages of discussions with other banks about other opportunities.

**Predicate for Punitive Damages**

42. BancorpSouth's conduct as described in this pleading constitutes actual fraud as well as an intentional wrong, insult or abuse so as to justify an award of punitive damages. Further, BancorpSouth's conduct as described above was deliberate, willful and malicious. Accordingly, McKeever asks the Court to award punitive damages to McKeever against BancorpSouth.

## V.  Conclusion and Prayer

McKeever respectfully requests that it have judgment against BancorpSouth for:

a. Actual damages;

b. Punitive damages;

c. All costs of expert witnesses and the costs of litigation;

d. Attorneys' fees for prosecution of this case at trial and on appeal;

e. Pre-judgment interests as required by Chapter 304, Texas Finance Code or other applicable laws;

f. Post-judgment interest, at the maximum legal rate; and

g. All other relief to which McKeever may be entitled at law, or in equity.

Respectfully submitted,

/s/ Thomas A. Nesbitt_____
Thomas A. Nesbitt
 State Bar No.  24007738
tnesbitt@dnaustin.com
Rachel L. Noffke
  State Bar No. 24007754
rnoffke@dnaustin.com
DeShazo & Nesbitt L.L.P.
809 West Avenue
Austin, Texas  78701
512/617-5560
512/617-5563 (Fax)

**COUNSEL FOR PLAINTIFF**
**KEITH MCKEEVER**